1

2

3

4

5

6

7            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON

8

9  SHELLEY COX,                  )
                                 )   No. CV-09-3046-CI
10           Plaintiff,          )
                                 )   ORDER GRANTING PLAINTIFF'S
11  v.                           )   MOTION FOR SUMMARY JUDGMENT
                                 )   AND REMANDING TO THE
12  MICHAEL J. ASTRUE, Commissioner )  COMMISSIONER FOR ADDITIONAL
    of Social Security,          )   PROCEEDINGS PURSUANT TO 42
13                               )   U.S.C. § 405(g)
             Defendant.          )
14                               )

15  _____

16      BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.

17  Rec. 14, 21.)  Attorney D. James Tree represents Shelley Cox

18  (Plaintiff); Special Assistant United States Attorney Nancy

19  Mishalanie represents the Commissioner of Social Security

20  (Defendant).   The parties have consented to proceed before a

21  magistrate judge. (Ct. Rec. 6.) After reviewing the administrative

22  record and briefs filed by the parties, the court the court **GRANTS**

23  Plaintiff's Motion for Summary Judgment, and **REMANDS** the matter to

24  the Commissioner for additional proceedings pursuant to sentence

25  four 42 U.S.C. § 405(g).

26                           **JURISDICTION**

27      Plaintiff protectively filed for disability insurance benefits

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS
PURSUANT TO 42 U.S.C. § 405(g) - 1

(DIB)on January 6, 2006. (Tr. 94.) She alleged disability due to foot, back, and hip problems; obsessive-compulsive disorder (OCD); depression; and attention-deficit hyperactivity disorder (ADHD) with an onset date of January 1, 1999. (Tr. 114.) Her claim was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on June 14, 2007, before ALJ Linda Haack. (Tr. 268-73.) Plaintiff appeared without an attorney representative, and the hearing was continued to give her time to retain counsel.[1] (Tr. 272.) Mr. Tree, who was appointed representative on April 2, 2008, (Tr. 40) appeared with Plaintiff at the continued hearing on May 8, 2008, before ALJ Catherine R. Lazuran. (Tr. 274-325.) Plaintiff, her mother Ellen Louise Anthony, and vocational expert Nancy Bloom (VE) testified. (*Id.*) The ALJ denied benefits on November 26, 2008, and the Appeals Council denied review. (Tr. 5-7, 15-27.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

---

[1] Prior to the June 2007 administrative hearing, Plaintiff's personal representative was her mother, Ellen Louise Anthony. (Tr. 165.) After the June 2007 hearing, Plaintiff attempted to retain counsel. It appears the first attorney retained withdrew on February 2, 2008 (Tr. 42); Mr. Tree was appointed attorney representative on April 2, 2008, (Tr. 40) and appeared at the May 8, 2008, hearing with Plaintiff. ALJ Lazuran acknowledged that Mr. Tree had taken the case "at the last minute," and it was "an unusual situation." (Tr. 277.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS PURSUANT TO 42 U.S.C. § 405(g) - 2

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 39 years old, married and living with her spouse. (Tr. 278-79.) She testified she has a 19-year-old daughter who had lived with and been cared for by Plaintiff's mother between first grade and ninth grade. (Tr. 302-03, 315.) Plaintiff completed high school with no special education classes reported. (Tr. 121.) Plaintiff testified she attended culinary school for a couple of months. (Tr. 279.) At the time of the hearing, she was working delivering boxes for two companies. (Tr. 280.) She reported she earned about $660 a month working a few hours a week, and had been doing this since 2006. (*Id.*) Plaintiff reported past work experience as a house keeper, dishwasher, grocery bagger, prep cook, bakery worker, cashier, fruit sorter, and food service worker. (Tr. 123, 281-93, 320.)

Plaintiff reported she was independent in her activities of daily living and personal care: she was able to clean, vacuum, dust, do laundry, wash dishes, and pay bills. (Tr. 300, 306.) She testified she cooked two or three times a week, but it took longer because of her perfectionism. (Tr. 300.) She also stated since January 1999, she had traveled with friends and/or family to Hawaii, Jamaica, Chicago, and Disneyland. She also reported she and her husband vacation two times a year. (Tr. 303.) Plaintiff testified she could still work in home services, fast foods, and as a bagger; she could walk 30 minutes before experiencing pain, but she could not keep a job because of her OCD, ADHD and recently diagnosed

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS
PURSUANT TO 42 U.S.C. § 405(g) - 3

Asperger's disorder.  (Tr. 294.)

**ADMINISTRATIVE DECISION**

ALJ Lazuran found Plaintiff's date of last insured for DIB purposes was December 31, 2002.  (Tr. 17.)  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date through her date of last insured. (*Id.*) At step two, she found Plaintiff had severe impairments of obesity and "a poorly defined developmental disorder." (*Id.*)  She concluded other impairments noted in the record were not severe.  (Tr. 18.) Non-severe impairments that existed prior to Plaintiff's date of last insured were identified as lumbar pain, left hip pain, vertebrogenic deficits or degenerative disc disease, and foot problems.  (Tr. 17-18.)  The ALJ also noted other medically determinable non-severe impairments that arose after Plaintiff's date of last insured, *i.e.,* left heel bone spur; foot surgery and pain; back pain; and mental disorders diagnosed in 2008.  (Tr. 18-19.)  The ALJ determined at step three that the impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings).  (Tr. 20-21.)  The ALJ found Plaintiff's statements regarding her symptoms and limitations were "not credible to the extent they are inconsistent with the residual functional capacity assessment . . . and because the statements do not describe factors existing as of the date last insured."  (Tr. 23.)  At step four, she determined Plaintiff could perform work at all exertional ranges with the following limitations: she could stand or walk 6 of 8 hours; sit 6 of 8 hours; occasionally stoop, kneel, crouch, and

crawl; and do simple work tasks "involving occasional social interaction." (Tr. 21.)   Considering VE testimony at step four, the ALJ found Plaintiff could perform several of her past relevant jobs: dishwasher, prep cook, pastry helper, fruit sorter, counter attendant, delivery driver, bagger, and housekeeper. (Tr. 25.)

Recognizing that some of Plaintiff's former employment was of short duration and may not meet the definition of past relevant work,[2] the ALJ proceeded to step five.   (Tr. 26.)   Considering Plaintiff's RFC and VE testimony, the ALJ determined there was a significant number of jobs Plaintiff could perform, including dishwasher, housekeeper, delivery driver and fruit sorter. Therefore, she was not under a "disability" as defined by the Social Security Act from her alleged onset date through her date of last insured. (*Id.*)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

---

[2] Under the Regulations, to be considered "past relevant work" a job must have been performed within the last 15 years, lasted long enough for the claimant to have learned to do it, and been substantial gainful activity.  20 C.F.R. § 404.1565(a).

support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS PURSUANT TO 42 U.S.C. § 405(g) - 6

licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when she: (1) improperly rejected Plaintiff's testimony; (2) improperly rejected Plaintiff's claim of severe OCD at step two; (3) rejected the opinions of examining and treating mental health professionals; (4) failed to call a medical expert to establish the onset date of her mental impairments; (5) failed to supplement the record; (6) failed to give proper weight to her mother's testimony; and (7) failed to include all her limitations in hypothetical questions posed to the VE. (Ct. Rec. 15 at 13-29.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS PURSUANT TO 42 U.S.C. § 405(g) - 7

1

**DISCUSSION**

2  **A.   Step Two - Mental Impairments**

3       At step two of the sequential evaluation, the ALJ determines

4  whether Plaintiff suffers from a "severe" impairment, *i.e.,* one

5  which has more than a slight effect on the claimant's ability to

6  work.  To satisfy step two's requirement of a severe impairment, the

7  claimant must prove the existence of a physical or mental impairment

8  by providing medical evidence consisting of signs, symptoms, and

9  laboratory findings; the claimant's own statement of symptoms alone

10 will not suffice.  20 C.F.R. §§ 404.1508.  The effects of all

11 symptoms must be evaluated on the basis of a medically determinable

12 impairment which can be shown to be the cause of the symptoms.  20

13 C.F.R. §§ 404.1529, 416.929.  Once medical evidence of an underlying

14 impairment has been shown, medical findings are not required to

15 support the alleged severity of symptoms.  *See Bunnell v. Sullivan,*

16 947 F.2d 341, 345 (9th Cir. 1991).

17      The Commissioner has passed regulations which guide dismissal

18 of claims at step two.  Those regulations state an impairment may be

19 found to be not severe *only* when evidence establishes a "slight

20 abnormality" on an individual's ability to work.  *Yuckert v. Bowen,*

21 841 F.2d 303, 306 (9th Cir. 1988) (*citing Social Security Ruling*

22 (*SSR*) 85-28).  The step two inquiry is a "*de minimis*" screening

23 device to dispose of groundless or frivolous claims.  *Bowen v.*

24 *Yuckert*, 482 U.S. 137, 153-154 (1987).  A mental impairment

25 generally is considered non-severe for purposes of step two if the

26 degree of limitation in the three functional areas of activities of

27 daily living, social functioning, and concentration, persistence or

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS
PURSUANT TO 42 U.S.C. § 405(g) - 8

pace is rated as "none" or "mild" and there have been no episodes of decompensation.  20 C.F.R. §§ 404.1520a(d)(1).

In determining whether a claimant has a severe impairment, the ALJ evaluates the medical evidence submitted and must explain the weight given to the opinions of accepted medical sources in the record.  A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion.  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining medical source.  *Lester*, 81 F.3d at 830.  If the opinion is contradicted, it can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews,* 53 F.3d at 1043.

Mental health therapists acting independently generally are not "acceptable medical sources" under the Regulations who can establish a medically determinable impairment; however, as "other sources," their opinions as to the effects of impairments on a claimant's ability to work must be considered and the weight given explained.  20 C.F.R. § 404.1513(d).  Although a mental health therapist cannot establish a medically determinable impairment, the weight given to his opinions must be evaluated on the basis of the therapist's qualifications, how consistent his opinions are with the other evidence, the amount of evidence provided in support of his opinions, and whether he "has a specialty or area of expertise related to the individual's impairment."  *SSR* 06-03p.

**B.   Evaluation of Evidence Presented**

In her DIB application, Plaintiff claimed disability due to three mental impairments: OCD, ADHD and depression. (Tr. 114.) In support of her claim, she submitted two letters from her mother, Ellen Louise Anthony, dated November 27, 1996, and January 4, 2006. (Tr. 99-100, 103-04.) The letters described Plaintiff's premature birth, her ADHD and OCD symptoms, and behavioral and learning problems since childhood, as well as her problems sustaining employment as an adult. (*Id.*) In addition to letters in the record, Ms. Anthony testified at the hearing and described Plaintiff as having had mental problems from childhood, which Ms. Anthony attributed in part to a premature birth. She also described unsuccessful attempts by doctors to diagnose and treat Plaintiff's condition with medication; behavior and academic problems at school; difficulties holding a job due to compulsive behavior and problems getting along with people; and Plaintiff's difficulties raising her daughter. (Tr. 314-18.) Ms. Anthony's testimony is consistent with the letters submitted as evidence.

In April 2008, Plaintiff's newly retained counsel referred Plaintiff to Central Washington Comprehensive Mental Health (CWCMH) for a psychiatric evaluation and mental health treatment. (Tr. 259-65.) Kimberly Humann, M.D., evaluated Plaintiff based on a personal interview and mental status examination. (Tr. 261-64.) As noted by Dr. Humann, no diagnostic tests were ordered or received for review. (Tr. 263.) Dr. Humann summarized Plaintiff's history and unsuccessful treatment of ADHD as a child, sporadic work history, problems with interpersonal relationships, problems caused by her

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS PURSUANT TO 42 U.S.C. § 405(g) - 10

perfectionism.    (Tr.  262.)    Based  on  her  own  observations,  Dr. Humann  noted  Plaintiff's  limited  insight  on  how  she  presents  as angry  and  irritable.  (Tr.  263.)

Dr.  Humann  assessed  Plaintiff  as  meeting  the  criteria  for  OCD in  a  severe  form  with  depressive  symptoms  secondary  to  the  OCD.   She also  assessed  a  long  history  of  difficulty  with  interpersonal relationships;  problems  modifying  her  facial  expressions  and  reading those  of  others;  and  difficulty  "navigating  social  settings  which appears  to  be  within  the  spectrum  of  a  pervasive  developmental disorder."  (Tr.  263.)   Dr.  Humann  indicated   the  specific  type  of pervasive  developmental  disorder  would  be  investigated  in  later therapy  sessions.   (*Id.*)   Based  on  her  examination,  diagnoses,  and a  prior  CWCMH  assessment,[3]  Dr.  Humann  opined  Plaintiff  would  be unemployable  without  a  supported  work  environment  because  of interpersonal  difficulties  and  poor  productivity.  (*Id.*)   Medication was  prescribed  for  Plaintiff's  OCD.   (Tr.  264.)

Clinic  notes  and  a  letter  from  mental  health  therapist  C.J. Burns  at  CWCMH  note  Plaintiff's  difficulties  with  interpersonal relationships  since  childhood  and  unsuccessful  treatment  for  ADHD  as reported  by  Plaintiff  and  her  mother.  (Tr.  259-60,  265.)   Mr.  Burns observed  Plaintiff  had  "marked  impairments  in  [her]  ability  to

---

[3]  Dr.  Humann  referred  the  reader  to  a  detailed  assessment  and description  of  Plaintiff's  disorder  by  therapist  C.J.  Burns  dated March  28,  2008.    (Tr.  262.)  However,  it  does  not  appear  this assessment  was  made  part  of  the  record.   On  remand,  Plaintiff  may submit  this  assessment  for  consideration.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS
PURSUANT TO 42 U.S.C. § 405(g) - 11

communicate." (Tr. 260.) The CWCMH records were submitted after the May 2008 hearing and considered by the ALJ in her decision.   (Tr. 19-20.)

At step two, the ALJ found,

Letters written by Ellen Louise Anthony, the claimant's mother, describe difficulties in function which have eluded diagnosis. While there were no mental health contacts until 2008, the claimant is given the benefit of the doubt, and it is concluded that she has experienced a poorly defined developmental disorder, before the date of last insured.

(Tr. 18.)  Although the ALJ cites to CWCMH records (Exhibits 11F and 12F), it appears the she based her mental impairment step two finding on the letters written by Plaintiff's mother. (*Id.*)   It is noted on independent review that Dr. Humann specifically diagnosed a "pervasive developmental disorder." (Tr. 263.)   Nonetheless, the ALJ did not reference this evidence as support of her step two findings.   Rather, the ALJ rejected Dr. Humann's formal diagnoses of OCD and pervasive developmental disorder, NOS[4] because (1) they were based on Plaintiff's uncorroborated self-report; (2) Dr. Humann

---

[4]  The DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV) defines Pervasive Developmental Disorder Not Otherwise Specified as follows:

This category should be used when there is a severe and pervasive impairment in the development of reciprocal social interaction or verbal and nonverbal communication skills, or when stereotyped behavior, interests, and activities are present, but the criteria are not met for a specific Pervasive Developmental Disorder, Schizophrenia, Schizotypal Personality Disorder, or Avoidant Personality Disorder.  For example, this category includes atypical autism – presentations that do not meet the criteria for Autistic Disorder because of late age of onset, atypical symptomatology, or subthreshold symptomatology, or all of these.

DSM-IV 299.80.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS
PURSUANT TO 42 U.S.C. § 405(g) - 12

saw Plaintiff only one time[5];(3) there was no treatment history or
12 month GAF assessment;  (4) the assessment was "questionable when
contrasted with claimant's history"; and the evaluation took place
long after the DIB insured period. (Tr. 20.)  Specifically, the ALJ
found neither Dr. Humann nor Mr. Burns "had enough contact with
claimant to provide a thorough evaluation.  They both appear to rely
on her subjective allegations, at a time long after those are
relevant, in view of the date she was last insured for disability
benefits." (Tr. 20.)

   The ALJ's rejection of Dr. Humann's diagnoses and opinions is
internally inconsistent with the ALJ's finding that Plaintiff had a
severe impairment of "poorly defined developmental disability,"
based on Plaintiff's mother's uncorroborated statements.  As found
by the ALJ, Plaintiff's mother's letters support Plaintiff's
allegations. (Tr. 23.)  Plaintiff's mother's statements relied upon
by the ALJ are consistent with the information Plaintiff provided to
Dr. Humann's and upon which the rejected medical source evaluation
is based.  Further, the ALJ's determination that Plaintiff is not

-----

   [5]  Dr. Humann's opinions are not contradicted by other medical
opinions, therefore reasons to reject her opinions must be "clear
and convincing."  By definition, an examining medical source has
limited contact with a claimant, as compared to a treating source
whose opinion is generally given more weight because of the ongoing
patient-physician relationship and longitudinal perspective.  20
C.F.R. § 404.1527.  The ALJ's rejection of Dr. Humann's opinions
because of this limited contact is not a "clear and convincing"
reason.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS
PURSUANT TO 42 U.S.C. § 405(g) - 13

credible is inconsistent with her finding that the mother's letters are supportive of Plaintiff's allegations. The ALJ gave no explanation why she credited Plaintiff's mother's testimony as support for one severe mental impairment, but rejected her testimony and Dr. Humann's opinions as irrelevant for the OCD and ADHD claims. (Tr. 24.) ("The testimony and letters of the mother are not highly relevant to the issues at hand.")

It does not appear the ALJ relied on medical evidence to support either the step two mental impairment finding or functional limitations caused by the identified mental impairment. (*See* Tr. 21, Finding 5.) The court is unable to discern upon what evidence a finding of "poorly defined developmental disorder" is based. The mother is not an accepted medical source qualified to diagnose a medically determinable mental impairment. 20 C.F.R. § 404.1508; 1513(a). The ALJ's step two findings do not represent a rational interpretation of the evidence, are not supported by substantial evidence, and as discussed below, are based on an inadequate record.

**C.    Duty to Develop Record**

Generally, an ALJ's duty to supplement the record is triggered by ambiguous evidence or when the record is inadequate to properly evaluate the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is heightened when a claimant is unrepresented at the proceedings. With a *pro se* claimant, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" and be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS PURSUANT TO 42 U.S.C. § 405(g) - 14

elicited." *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981) (*citing Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978). Where a claimant is found to have mental deficits and may be unable to protect her interests, the ALJ's duty is heightened. *Tonapetyan*, 242 F.3d at 1150. Here, the ALJ had a duty to develop the record for several reasons: (1) Plaintiff was represented by a lay person during the majority of the administrative proceedings; (2) her first appointed counsel withdrew shortly before her hearing; (3) current appointed counsel was not obtained until four weeks before the hearing; (4) Plaintiff alleges mental illness; and (5) the record is insufficient to properly evaluate the mental impairments claimed and their limiting effects.

The record shows the Commissioner was aware Plaintiff was unrepresented by counsel until very late in the proceedings. (Tr. 9, 42.) ALJ Lazuran acknowledged Plaintiff's attorney had taken the case at the last minute. (Tr. 277.) The fact that Plaintiff's counsel made an eleventh hour attempt to supplement the record does not relieve the Commissioner of his duty to fully and fairly evaluate Plaintiff's claim. *Tonapetyan,* 242 F.3d at 1150. In addition to acknowledging the attorney's recent appointment to the case, the ALJ accepted that Plaintiff suffered some mental deficiencies, as reflected in her step two finding, but considered the uncontradicted evaluation by Dr. Humann inadequate to confirm a diagnosis of alleged OCD or ADHD. (Tr. 24.) When she evaluated the post-hearing evidence and concluded it was not helpful, the ALJ had a duty to "conscientiously probe" or "inquire scrupulously" into the severity and limiting effects, if any, of Plaintiff's mental

problems.  Without additional evidence, the record is inadequate to
evaluate Plaintiff's claim.

**D.    Remedy**

A medically determinable impairment must be established by an
acceptable medical source.  20 C.F.R. §§ 404.1508.  The ALJ does not
identify substantial evidence to support her step two finding of a
"poorly defined developmental disorder," or her unexplained
conclusion that Plaintiff is limited to simple work tasks "involving
occasional social interaction." (Tr. 17, 21.)  The Commissioner has
a duty to Plaintiff to "ensure favorable as well as unfavorable
facts and circumstances are elicited"; therefore, the matter must be
remanded for additional proceedings.  *See Vidal*, 637 F.2d at 713.
If additional proceedings and objective testing on remand reveal
Plaintiff has medically determinable mental impairments and credible
limitations, and the presentation indicates the possibility of a
remote onset of disability, medical expert testimony is required to
infer an onset date.  *SSR* 83-20.[6]  A medical expert also may be

---

[6] The onset date represents the date upon which Plaintiff is
disabled and, therefore, eligible for benefits.  The establishment
of the onset date is especially critical in Title II (DIB) cases,
because it may affect whether Plaintiff is eligible for past earned
benefits, and if so, the amount she can be paid.  Where an
impairment is not caused by a distinct trauma, or is progressive,
and/or the record is ambiguous as to the onset of disability, the
ALJ must call a medical expert to aid in determining the onset date.
Thus, if additional testing reveals disabling limitations from a

helpful to the ALJ in resolving conflicts in the medical evidence and identifying impairments based on the entire medical record.

Additional evidence and the assistance of a medical expert might not result in a finding of disability. A step two determination that a mental impairment is medically determinable and severe "only raises a prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Thus, the court makes no rulings as to Plaintiff's severe impairments or resulting limitations. It is possible Plaintiff will not succeed in proving she is disabled as defined by the Social Security Act.

On remand the Commissioner shall obtain additional psychological diagnostic testing and evaluation by an acceptable medical source, and if necessary, medical expert testimony to assist in interpreting the medical evidence. The ALJ shall also make new credibility findings; re-evaluate lay witness testimony; make a new RFC determination based on the entire record; and, if necessary, obtain vocational expert testimony at steps four and five. Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **GRANTED** and the ALJ's decision is **REVERSED AND REMANDED** to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and consistent with this decision;

2.    Defendant's Motion for Summary Judgment **(Ct. Rec. 21)** is **DENIED.**

---

severe mental impairment, a medical expert may be required to establish when the disability began. *SSR* 83-20.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS PURSUANT TO 42 U.S.C. § 405(g) - 17

3.   Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **Plaintiff,** and the file shall be **CLOSED**.

DATED July 8, 2010.


                    S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS PURSUANT TO 42 U.S.C. § 405(g) - 18